Good morning, Your Honor. This is Tony Farmani on behalf of Mr. Navarette. Your Honor, the Supreme Court has been very clear with respect to custodial interrogations, and it's been clear with respect to the right to cancel, if you assert your right to cancel, unless the suspect re-initiates contact, police can re-contact the suspect. In the case of right to remain silent, which is the case here, the Supreme Court has allowed for re-initiation by the police, but only in very limited set of circumstances, some of which were present here, but the most critical elements were not. So let me ask you this. Since, does Mr. Navarette contend, is that, did I say that wrong? Is it? You said it perfectly clear, Your Honor. Okay. Contend that the California Court of Appeals application of Michigan v. Mosley to his case is unreasonable as a matter of law or a fact? Well I think it's a matter of both, Your Honor, because factually and legally, well it's a question of fact and law. So do you agree that AEDPA is our standard here? I would agree that the California Court of Appeals adjudicated that claim, yes, Your Honor. Well are, what we review it under, are we reviewing this under AEDPA? Well you wouldn't review it under AEDPA because the California Court of Appeals unreasonably applied the law. All right, but we start with AEDPA and then you have to show that it's an unreasonable application in order to get other than AEDPA deference. Is that correct? And the basis for it being an unreasonable application is because the detectives here re-initiated contact, which is permissible, there's nothing wrong with that, but re-initiated contact and then started interrogating the 19-year-old defendant without giving them any warnings up front. Well what, what inculpatory evidence came out of that first conversation before they gave Miranda? I didn't see any. Well under Supreme Court's definition, respectfully, Your Honor, under the Supreme Court's definition of the inculpatory statements, any statement that gets admitted into evidence. Even if I just say, hey, what's your name? So then you got to ask, do Miranda before you ask their name? Well it depends on the circumstances. I think in this, in your case. Well so that was kind of an overstatement on your part then to say that any word that comes out of their mouth is inculpatory. Well that's not my statement at all, Your Honor. That's the Supreme Court's statement. Any statement that comes in, into evidence, is an inculpatory, whether it's inculpatory or inculpatory. If it's admitted into evidence, according to Supreme Court law, now we can disagree with that and say, well, you know, if you say your name, but we don't have that here. What we have, the set of circumstances we have here, is that the officers go in there knowing full well that the defendant has already asserted his right to remain silent. They go in there, they're not, they're not going in there to get booking information. And they're not going in there and simply asking questions related to his background. They're trying to soften this guy up. That's what they're doing. So what case says if you chit chat with someone, that's clearly established Supreme Court law and violates? Well, we know Mosley and Miranda. Well, there's no Supreme Court case, and we know from Supreme Court that you don't need the identical set of facts. What you need is a Supreme Court case, which is Mosley, in this set of circumstances, and Miranda itself. Now Mosley allowed for re-initiation of contact with the police officers if it involved a different crime. And if there was, Miranda is given at the outset of the interrogation. Now we know that two days passed by here, but we have to look at the circumstances here. These two days, he was in prison the whole time, in jail the whole time. He had no contact with the outside world, none whatsoever. He made one phone call to his, the victim's mother, who was his step-mom, and that was it. He had no other contact. So he's sitting in there, and he's already an, he's already in an adversarial situation, Your Honor. He's already said that, I don't want to talk about this crime. Then they come back in there two days later. We know from the very mouth of the officer who interrogated him, one of the detectives, says, I went in there because I wanted to question him about the crime. As clear as day. He says it in, she says it in there. She says, I went in there to question him about the crime. And that's exactly, that's precisely what they did. But initially, they're clever, and that's why the Supreme Court has said that, you know, we know from case law and common sense, when police officers go in there and they start chatting with someone, they're not, they're not interested in getting to know the suspect. They're interested in softening up the suspect, which is precisely what the Supreme Court has said is not something that should be done when someone asserts the right to remain silent. What you do is, what would have been perfectly reasonable for these officers to do is to go in there, read him his Miranda rights from the very outset and say, look, we know you asserted your right to remain silent. We're going to reassert, we're going to re-advise you of your Miranda rights. And what do you think? We change your mind. That might have been permissible. But what happened in this case, Your Honor, is they go in there, they talk about the very exact crime that this man has said he doesn't want to talk about. In the first 30 minutes, though, prior to the Miranda, can you point to an incriminating statement that your client made? Sure. He made, well, about his age. If we take it, technically speaking, Your Honor, he did talk about his age. He did talk about his opportunities to be alone. Let's just say, let's just, if Your Honor is suggesting we take it just the 30 minutes and look to see if there were any incriminating statements under a very strict definition of incriminating, then I would say just the age alone, which was the element of the most serious crimes charged against him, that in and of itself, Your Honor, would have been incriminating. And the fact that he says when he moved into the house, because the central question here, Your Honor, the very question at the heart of the trial was whether or not he had committed the life-term acts, which would have been, I hate to mention it, but the idea is when they go in there and they find out when he had moved in, when he had moved in back to the house, that in and of itself, Your Honor, is incriminating, because that would have established when he went, the age requirement, not considering the fact that he asked for his age on top of that. And they ask him about his criminal background, they ask him whether he sells or does drugs. I mean, these are all, any answer to any response to those questions would have been incriminating under any definition. There's a case that the State has cited called Grooms, and in Grooms v. Keeney, and I, at least reading my read of that case, that's not a good case for you. I don't think you responded to their citation of it. I wanted to give you an opportunity now to talk about the Grooms case. Well, I'll tell you this, Your Honor. The Grooms case, I can't tell you, I know the facts inside out. But what I do know, that case stands for the proposition, in a footnote, I believe, where they talk about where the person wasn't given, the suspect wasn't given, or what the, there was a, the issue was whether or not the fact that he was interrogated about the same crime. Correct. Right. And I think they mentioned that in a footnote, saying that in and of itself was not an issue, so much so because they did Mirandize him prior to any questioning. They didn't do that here, Your Honor. And the fact that the California Court of Appeal is saying that they did, they're just missing the whole point. You know, they're, they're, they don't even mention it. And it's just very disingenuous, Your Honor, for, for a Court of Appeal at that level to look at this set of facts and come back and say, well, they did Mirandize him at the very outset. They didn't. We all know that. We all know that what they did to this guy is they get him in there, they start talking about his school, his background, his, his sports activities, they soften, soften him up. This is precisely why the U.S. Supreme Court has come down and said, you don't do. This is exactly the type of situation that we don't want detectives to be doing to suspects, because there is no Fifth Amendment right otherwise, because anybody- Do you want to save me time for rebuttal? Yes, Your Honor, if I may. Okay, thank you. You might want to think about how you might want to additionally respond to the government's, uh, site on that particular case, because I'm sure they'll talk about it. Good morning. Good morning, Your Honors. Deputy Attorney General Taylor Wynn appearing for respondents. The, this case is reviewed under EPA and under EPA, the California Court of Appeal here reasonably applied Mosley and the factors laid out in Mosley in determining that the, uh, petitioner's right to remain silent was fully respected here. Mosley lays out four factors and of those four factors, three are in the respondent's favor. The only difference between Mosley and this case is that the suspect was, uh, questioned about the same crime. And as Judge Owen, um, pointed out, this court has determined in both Keeney, um, and U.S. versus, um, Sioux that the fact that the petitioner or the suspect is questioned about the same crime, um, at re, re-initiation is not important or determinative of the, the, um, issue. The more important- Yeah. Counsel, Grubbs seemed to suggest, uh, there were fresh, uh, set of warnings, uh, that, uh, alluded him to his Miranda rights. Those were not given for 30 minutes of interrogation and, uh, I wonder how that squares with Mosley, uh, scrupulously honoring, uh, his, uh, original invocation of, um, a Miranda right. And I apologize for my voice, but I have a medical condition that, uh, makes it sometimes hard to hear. That's okay, Your Honor. Um, the, the, Mosley does require that the, uh, suspect be given a fresh set of Miranda at the outset of interrogation. So in this case, the issue becomes whether the suspect was subject to interrogation when he was questioned about his biographical, um, information. And the detectives actually made it very clear when they first came. It is true that they came, that, that Detective Toosby testified at trial that she came to talk to him about the crime. However, when they walked into the room, they said, we have a form to fill out. This form does not have to do anything with the case and it only has to do with your background. They proceed to ask him about his name, age, address. The only time the victim came up here was when they asked, who do you live with? And he says, I live with my stepmother and four sisters, including the victim. And the only other question they asked about the victim here is how old she was and what school she went to. Beyond that, there was no other conversation about the victim. Now, biographical cases have said that, um, police officers can use, uh, the collection of biographical, um, information as a pretext to getting incriminating evidence. However, there's no such evidence here. The detectives, uh, limited their questions to his background. Um, they, the questions and context never referred to or related to the crimes here. Um, they never followed up on any questions they asked that were generally, um, related to the victim. And the test for interrogation is, is set out by Rhode Island V. Ennis, um, which focuses on the suspect's perspective. And from the petitioner's perspective here, he was warned that they are not talking about the crime. So from his perspective, they're not talking about the crime at all. Um, at no time, uh, Ennis also says that, um, for it to be an interrogation, the acts or words of a police officer must, um, be reasonably likely to elicit incriminating statements. And the officers here, or the detectives here, did nothing or said nothing that would, um, likely elicit an incriminating statement. Um, in fact, the petitioner made no incriminating statement, um, before he was Mirandized. And so to answer your, that was a very long answer, but to answer your question on point, there was no interrogation prior to Miranda. And the petitioner here was given fresh set of Miranda, uh, warnings before interrogation meeting this court and Mosley's, um, requirement that that be given. So was there anything incriminating that was elicited prior to the Miranda warnings? I think counsel for the petitioner indicated, well, first he said his name, but then he said his age. Uh, his age is not in itself, uh, incriminating, um, that, that facts were that that fact could be established from anything, um, that the officer had or the, the prosecutor could prove at trial from, um, probation reports or, or booking reports. So that in itself, the, the math, the math, the fact that he said that he was 18, um, was not incriminating itself. Uh, beyond that statement, uh, there was nothing else that the, uh, petitioner said, said that was incriminating. Um, he never said, um, that he was alone with the victim. Uh, the fact that he lived with the victim is not an element of the crime and his access to the victim, um, while living with her gave her access. He didn't have to her, he would have access to her in babysitting her. He would have access to her. So the fact that he lived with her and say that he lived with her was not in itself incriminating. Um, grooms V. Kenney is, uh, a, a good case as well as, and that would case was relied on by a United States versus you. Um, in both cases, the, uh, the detectives questioned the suspect about the same crime. And in both cases that has that this court determined that not to be a, um, Mosley or Miranda violation. Um, I would also direct the court to a, uh, fourth circuit case, um, that is Fleming versus met ish. And that's at five, five, six F third five 20. And that's cited on our brief, uh, at page 21. I, uh, that case is closely related to this case because it, it, it involves both the same subject matter as well as a belated, uh, Miranda, um, warning. And in that case, the court found that, um, both, uh, both factors favors, um, favors a, a, a compliance with Mosley as well as Miranda. So, um, I mean, the cases that you're, you're saying that there was no unreasonable application of, to the facts or to the law and the relevant law was Mosley or Mosley. Um, and then if you look at the 30 minutes or whatever, would it be Oregon V. Elstad or Missouri V. Seibert? Yes. Well, this is closer to Elstad than Seibert. Seibert is, uh, is a case where the detective engaged in a two-step interrogation. And the facts in that case clearly showed that the detective made a conscious decision to withhold Miranda in order to get a criminally incriminating statement and then administer, um, and Miranda warnings and then gets the same incriminating statement. We don't have those, uh, those, that's the same situation here. In Elstad, the court, the Supreme Court says that an unworn statement does not taint a post-warning confession if the unborn statement was not, it was not obtained through coercion or improper tactic. So, so what would be your position if the petitioner were to overcome AEDPA and get to de novo review? Would the omission of the confession be harmless or prejudicial? Should this court, uh, reach, uh, the de novo review of harmless? It would still be harmless, Your Honor. Even without the confession here, we have the testimony of the victim. We have his confession, the petitioner's confession to his mother that, uh, he did this to his sister. Uh, the, the victim tell, told, uh, her, her, her teacher, the, um, sexual assault examination nurse that, uh, of the, of the, about the assault, as well as the investigating officers. And so her, her testimony at trial was corroborated by all of the other evidence. Was there any physical evidence? There was not, Your Honor. Okay. Um, and so even without this confession, there was still compelling evidence of his guilt. Um, and so therefore, based on the records, um, and the court of appeals application of Mosley, um, it reasonably finds that there was no Miranda violation in this case. And we would ask that the district court, um, denial of habeas be affirmed. Thank you. Your time is almost up, so you don't have to use the last 18 seconds. Thank you. Doesn't really work that way, but... This one, I, I did read the case that Judge Owen had mentioned. Uh, I see that case actually supporting my, my view of the facts, Your Honor, or my view of the law or the Supreme Court's view of the law, Your Honor. Because that case, you, you know, the issue again was that he was not, he, he, he, he, he was interrogated about the same crime, which would have been a theft crime. And the officers didn't in fact know that he had asserted his right to silence. And I apologize for saying that was mentioned in the footnote. It was not. It was the main issue in the case. But again, this case is completely different, Your Honor. Because what we have here is if, if, if you want to characterize what the officers did any other way but interrogation, it would just simply be a fiction. That's what they did. They interrogated him. They interrogated him by asking him questions. Maybe they didn't ask him specifically about the molestations, but they did ask him questions that are designed to get incriminating statements, which is the law, which is a clearly established law. And that's what they did. They were, they were out there to get a confession out of him. And they did get a confession out of him, working their way from the initial part all the way through. They could have maraned those at the very beginning. They didn't. They chose not to do so because they wanted to get those statements. Now, as far as it's a question, if, if, if the court has any questions. Mr. Klay, your time's up. Yeah. So unless my colleagues have any questions. Right. I wanted to ask you. Judge Fischer, any additional? No. No, we don't have any additional questions. Thank you both for your argument. This matter will stand submitted.
judges: Fisher, Callahan, Owens